## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN A. ZEIGLER, | ) | CASE NO. 1:19-cv-01998 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Kevin A. Zeigler (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. Procedural History

On September 21, 2015, Plaintiff filed his applications for DIB and SSI, alleging a disability onset date of April 10, 2015. (R. 13, Transcript (Tr.) 196-204). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 74-158). Plaintiff participated in the hearing on June 5, 2018, was represented by counsel, and testified. (Tr. 35-73). A vocational expert (VE) also

participated and testified. *Id.* On October 2, 2018, the ALJ found Plaintiff not disabled. (Tr. 23).

On June 2, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision,

and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On August 29,

2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The

parties have completed briefing in this case. (R. 14, 16 & 17).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by failing to give

good reasons for not giving controlling weight to a treating physician's opinion, and (2) the ALJ

failed to properly evaluate Plaintiff's symptoms. (R. 14).

## II. Evidence

### A. Relevant Medical Evidence[1]

### 1.  Treatment Records

On April 13, 2015, Plaintiff underwent a lumbar laminectomy at L4 and L5, foraminotomy

with facetectomy with decompression of the nerve root, as well as interbody fusion. (Tr. 529-

530). The surgery was performed by Don Moore, M.D. (Tr. 528-533).

On July 24, 2015, Plaintiff underwent an MRI of his lumbar spine due to low back pain.

(Tr. 549). Fredrich H. Dengel, M.D., commented that Plaintiff had undergone intervertebral

fusion with posterior hardware stabilization at L4-L5 since the prior examination of November

24, 2014. *Id.* The MRI revealed metal artifact associated with pedicle screws and stabilizing

struts, the fusion site was unremarkable, and there was an abundance of soft tissue at the

operative site. *Id.* There was mild spinal canal stenosis at L3-L4 unchanged from the prior exam,

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

disc space was well-maintained at all levels above L3, there was a small annular tear, and a mild degree of disc protrusion "slightly displacing the left S1 nerve root," somewhat increased since the prior exam. *Id*. The MRI was ordered by Plaintiff's pain management physician, Adam J. Hedaya, M.D. (Tr. 549).

On August 24, 2015, Laura Goldberg, M.D. conducted an EMG exam and found bilateral median neuropathies mild in degree, mildly reduced left ulnar sensory amplitude, and no definite evidence of a superimposed left cervical motor radiculopathy. (Tr. 574). Dr. Goldberg noted that the exam was "somewhat hampered … due to poor voluntary effort, pain, or less likely" due to a disorder of motor unit control. *Id*. Her impression was left ulnar neuritis, and she recommended occupational therapy. *Id*.

On September 15, 2015, Plaintiff saw his surgeon, Dr. Moore, complaining of recurrent right leg pain without weakness and left hand pain with ulnar neuritis. (Tr. 566). Dr. Moore noted Plaintiff underwent sacral iliac joint injection the day before without significant relief, while a nerve block was administered on September 11, 2015. *Id*. On physical examination, Plaintiff was 6'1" tall and weighed 300 pounds. (Tr. 568). He was in no apparent distress, and his cervical, thoracic, and lumbar spine ranges of motion were within normal limits (WNL). (Tr. 568-569). In the pelvis he had exquisite right sacroiliac tenderness, positive Faber test, with pain on both left and right leg maneuvers. (Tr. 569). He had 5/5 strength in all muscle groups of the lower extremities. *Id*. He had a normal gait, and a "[q]uestionable" straight leg raise on the right. *Id*. Dr. Moore opined that "[b]ased on improved right L5 function despite subjective complaint of right leg pain, I am not certain that revision operation or even exploration is warranted based on the MRI as well as a CT scan." (Tr. 569). Dr. Moore was "somewhat perplexed that [Plaintiff's] overall presentation appears to be relatively comfortable despite his subjective

complaint as well as manifestation of pain during the examination." *Id*.

On January 5, 2016, Plaintiff reported to Vicki Brown, M.D., that sometimes he cannot move due to sudden onset of severe muscle spasms. (Tr. 1030). In those instances, he cannot get out of bed in the morning hours. *Id*. Plaintiff reported ongoing pain management with Dr. Hedaya, but no improvement after recent injections. *Id*. On physical examination, Plaintiff was noted as being overweight, that he shifted from seated to standing position several times during the interview, and that he used a cane. (Tr. 1031).

On April 3, 2017, Plaintiff complained to Dr. Hedaya of bilateral back pain and low back pain that radiates down his legs. (Tr. 1274-1275). He described his pain as sharp, shooting, stabbing with an intensity of an eight on a ten-point scale. (Tr. 1275). He further reported weak limbs, numbness of the legs/feet, and tingling. *Id*. On review of symptoms, Dr. Hedaya noted that Plaintiff reports back pain, "but reports no muscle aches, no muscle weakness, no arthralgias/joint pain, no swelling in the extremities, no neck pain, *no difficulty walking*, no cramps, no osteoporosis, and no fractures. He reports **gait dysfunction** but reports no loss of consciousness, no weakness, no numbness, no seizures, no dizziness, no migraines, no headaches, no tremor, and no paralysis." (Tr. 1275-1276) (italics added). On examination, Plaintiff's gait and stance were limp, asymmetrical, waddling and antalgic; Plaintiff was using a cane. (Tr. 1276). In the lumbosacral spine, Dr. Hedaya noted tenderness upon palpation, reduced range of motion, decreased pin prick L4 on the left and pin prick L5 on the left, and positive straight leg raise on the left. *Id*. Dr. Hedaya diagnosed post-laminectomy syndrome. *Id*.

At a follow up examination on April 17, 2017, Plaintiff had a wide stance, antalgic git, and was ambulating with cane. (Tr. 1284). Plaintiff reported that his activities of daily living did not improve with medication and that the severity of his pain was worsening. (Tr. 1283). He

4

exhibited tenderness of the carpi radials in his wrist, and reduced flexion/extension/internal rotation of the right wrist (Tr. 1284). He was prescribed Ibuprofen and Extra Strength Tylenol. (Tr. 1285).

On May 8, 2017, Plaintiff was seen by Dr. Hedaya. (Tr. 1280-1282). According to Plaintiff, he had shooting pain that was worsening and constant, which was aggravated by flexion, carrying, twisting, lifting, standing, walking. (Tr. 1280). He reported his activities of daily living did not improve with medication. *Id*. On review of symptoms, Dr. Hedaya noted that Plaintiff "reports back pain but reports no muscle aches, no muscle weakness, no arthralgias/joint pain, no swelling in the extremities, no difficulty walking, no cramps, no osteoporosis, and no fractures[,] … no arm pain on exertion, no shortness of breath when walking, no shortness of breath when lying down, no palpitations, no known heart murmur, and no ankle swelling." (Tr. 1280). Further, Plaintiff reported "no tremor, no gait dysfunction, and no paralysis. He reports no depression, no sleep disturbances, … [and] no fatigue." *Id*. On physical examination, Plaintiff had a normal gait, normal heel/toe test, and did not use an assistive device. (Tr. 1281). In the lumbar spine, there was tenderness of the paraspinal region and "pain with motion" on both active and passive range of motion. *Id*. Plaintiff had 5/5 motor strength. *Id*. Plaintiff also had negative straight leg raise tests, negative Patrick-Fabere tests, and normal reflexes. *Id*. Plaintiff reported "100% relief from his scs [spinal cord stimulator] trial until the leads migrated and came out," and he wanted "to proceed with the permanent implant." *Id*. (Tr. 1281). Dr. Hedaya indicated that "[w]e will schedule the procedure." *Id*.

On May 23, 2017, Dr. Hedaya again noted on physical examination that Plaintiff had an antalgic gait, wide stance, no limp, and was ambulating with cane. (Tr. 1290).

On July 27, 2017, Plaintiff reported to Dr. Brown that a motor vehicle accident exacerbated

5

his chronic pain. (Tr. 1155). He reported right wrist pain radiating to the elbow. *Id.* On physical examination, Plaintiff was noted as obese, in no acute distress, and with no cyanosis or edema in the extremities. (Tr. 1157).

On August 24, 2017, Plaintiff underwent a CT scan of his lumbar spine. (Tr. 1364). The examination revealed moderate central spinal stenosis, mild left lateral recess, and foraminal narrowing at L3-L4. *Id.* "At the L4-L5 level, intervertebral disc implants are present with mild irregular sclerotic degenerative endplate changes, which appear unchanged from the prior studies." (Tr. 1366). "At the L5-Sl level, there is mild-to-moderate disc space narrowing, a small broad-based left subarticular to foraminal disc protrusion, mild posterior lateral endplate osteophytosis, hypertrophic facet and ligamentum flavum changes, which results in mild left lateral recess and neural foraminal narrowing." *Id.*

On August 29, 2017, Plaintiff was administered a right wrist trigger point injection. (Tr. 1306). Dr. Hedaya diagnosed lumbar post-laminectomy syndrome, lateral epicondylitis, and wrist joint pain. (Tr. 1311).

On October 30, 2017, Plaintiff had a spinal cord stimulator implanted. (Tr. 1313).

**2.   Opinions Concerning Plaintiff's Functional Limitations**

On December 27, 2015, Dr. Brown wrote a letter to Plaintiff noting that she had been his primary care physician for well over ten years. (Tr. 879-880). She indicated Plaintiff had lumbar surgery on April 13, 2015, but had not had improvement of pain or return of function. *Id.* Dr. Brown's letter further stated as follows:

> You have constant lumbar pain, this radiates to R leg posteriorly and this is interruptive of sleep at night. You can sit no longer than 30 min without requiring standing and change of position. You are unable to lift or carry more than 10#. Your walking tolerance is 100 yds maximum after which you must sit. You have fallen at least twice in the last 2 months due to poor balance/lower extremity

6

strength. Since lumbar surgery you have had a L ulnar neuropathy which causes pain and numbness medial L hand. This has been injected without improvement and you have seen an orthopedic hand specialist with results of that evaluation pending. At this time, you are unable to return to factory work. Considering your current functional status, other interventions are not immediately recommended according to your consultants. This time of disability continues [sic] from April 13, 2015 for at least one year.

(Tr. 879-880).

On March 28, 2016, Dr. Brown completed a Disability Impairment Questionnaire. (Tr. 899-903). She indicated she began treating Plaintiff on November 9, 2005, and had most recently examined him on February 15, 2016. (Tr. 899). Plaintiff's diagnoses were listed as back pain, right lumbar radiculopathy, left ulnar neuropathy, and post laminectomy syndrome. *Id*. Dr. Brown completed a checklist-style questionnaire indicating that Plaintiff could perform a job in a seated position for less than one-hour and stand/walk for less than one-hour in an eight-hour work day. (Tr. 901). She indicated Plaintiff needed to arise from a seated position every 30 to 60 minutes, and could return to a seated position after 30 to 60 minutes. *Id*. She indicated Plaintiff could frequently lift/carry up to ten pounds and occasionally lift/carry twenty pounds. *Id*. She checked a blank indicating Plaintiff had significant limitations in reaching, handling, and fingering. (Tr. 902). Specifically, Plaintiff could frequently grasp, turn, twist, perform fine manipulation and reach overhead with her right upper extremity, but could perform these same actions only occasionally with the left upper extremity. *Id*. Dr. Brown indicated Plaintiff's pain, fatigue, or other symptoms would frequently interfere with attention and concentration. *Id*. She also indicated Plaintiff would need unscheduled breaks hourly and would need to rest for 30 minutes before returning to work. *Id*. Finally, she predicted Plaintiff would miss more than three days of work per month due to his impairments or treatment. (Tr. 903).

On May 2, 2016, physical therapist Melinda DePolo completed a Functional Capacity

7

Evaluation (FCE). (Tr. 1059-1077). Ms. DePolo found that Plaintiff gave "near full physical effort with the tests involved in the evaluation." (Tr. 1059). However, Plaintiff gave low effort on the heart rate monitoring test and "stopped several tests secondary to severe pain." *Id*. Plaintiff demonstrated limitations in prolonged sitting, and the FCE was stopped prior to the stooping, kneeling, crouching, crawling, and vertical reaching tests due to secondary severe pain. (Tr. 1061). Similarly, Plaintiff was unable to complete the lift, push/pull, or carry tests after Plaintiff reported severe pain following the Purdue pegboard test due to pain in his right low back and leg pain (Tr. 1061). Ms. DePolo opined that "it is unlikely that this client would be able to perform even sedentary work at this time." *Id*. She noted that Plaintiff could not tolerate sitting or standing at end of the FCE, shifting positions continually due to severe pain. *Id*.   (Tr. 1061).

On September 28, 2016, Plaintiff was seen by Sushil Sethi, M.D., for a consultative exam. (Tr. 1140-1145). Plaintiff was noted as being 6'1" tall and weighing 325 pounds. (Tr. 1140). Dr. Sethi noted it had only been a short time since Plaintiff's surgery and he will continue to improve. (Tr. 1141). He further noted as follows:

> His orthopedist does not feel that he had any complications and continues to encourage him to do his exercises. He is not requiring any injections at this time. He was able to drive himself to his appointment in a big van. He could back out of the parking space at our office and we observed him easily maneuvering his large vehicle to drive away without difficulty. His subjective symptoms do appear to far exceed his physical findings. He had no acute inflammatory response, fever, emergency room visits, or hospitalizations since his surgery.

(Tr. 1141). On physical examination, all results were within normal limits except that Plaintiff had tenderness in the lumbar spine. (Tr. 1142). Notably, Plaintiff had a normal gait, negative straight leg raise tests were negative bilaterally, normal range of motion in the extremities, some limited range of motion in the spine, normal strength, and Plaintiff did not use an assistive device. (Tr. 1142-1144). Dr. Sethi opined that Plaintiff had only slight functional limitations with

standing, walking, sitting, pushing/pulling, bending, and repetitive foot movements. (Tr. 1144). Further, he opined Plaintiff had no functional limitations in his ability to reach and perform fine motor skills. *Id*. Dr. Sethi further opined Plaintiff could lift up to twenty pounds with frequent lifting/carrying up to ten pounds. (Tr. 1145). Plaintiff was able to "get on and off the examination table without assistance." *Id*.

On October 5, 2016, Dr. Brown completed a treating physician form. (Tr. 1094-1099). She checked boxes indicating Plaintiff had an antalgic gait, was unable to heel/toe walk, and used a cane. (Tr. 1096). Dr. Brown indicated Plaintiff had a positive straight leg raise test on the right at ten degrees. (Tr. 1097). She checked boxes indicating that Plaintiff was "extremely limited" in his ability to stand, walk, and bend; was moderately limited in his ability to sit and perform repetitive foot movements; and had no fine motor limitations. (Tr. 1098). Dr. Brown opined that Plaintiff could lift up to twenty pounds at a time, and frequently lift/carry objects weighing up to ten pounds. (Tr. 1099).

**B. Relevant Hearing Testimony**

At the June 5, 2018 hearing, Plaintiff testified as follows:

- He is unable to work due to pain down his right leg and numbness in his left hand. (Tr. 39). The numbness causes him to drop things and his grip strength is reduced. *Id*. He falls down all the time. (Tr. 40). He also hurt his right arm in a car accident that swells up in the elbow and forearm area. (Tr. 42).

- He uses a cane that was prescribed by either Dr. Moore or Dr. Walker. (Tr. 41). He also sometimes uses a walker. *Id*. He uses his cane 95 percent of the time. *Id*.

- He has very few good days. (Tr. 42). On particularly bad days, which number about fifteen per month, he only leaves his bedroom to hobble across the hall to the bathroom. (Tr. 43).

- His medications make him sleepy and he takes about four naps during the day. (Tr. 43-44). His pain makes it difficult to sleep at night. (Tr. 44).

9

- When he has shooting pain in his leg, elevating his feet helps. (Tr. 44-45). He believes that during a workday, he would need to elevate his legs eight to ten times. (Tr. 45-46).

- With respect to typing on a keyboard, writing with a pen, shuffling papers, texting on a phone, and using his fingers to pinch and pick up paperclips, Plaintiff did not believe he could perform those activities for two to three minutes at a time for up to two and half hours of the day, five days a week. (Tr. 46). He asserted that numbness and lack of feeling in his fingers would make it difficult. *Id.*

- Using his arms to reach results in shooting pain down his leg that usually causes him to fall down. (Tr. 47).

- Often he cannot cook or do the laundry. (Tr. 48). His parents or friends help him out. (Tr. 49). Some days he needs help getting in and out of the tub. *Id.*

The ALJ posed the following hypothetical question to the VE:

> Hypothetical No. 1, sedentary work as defined by the regulations. Foot control operation with the right is limited to the occasional level. Sit/stand option must be allowed to change positions after 30 minutes to stand or stretch for a minute or two, or to sit for a minute or two just to change positions.
>
> Push or pull is limited as per exertional weight limits, and, also, with the left, limited to the occasional level. Cane is required for ambulation. Never climbing ladders, ropes or scaffolds. Occasional for climbing ramps or stairs, balancing, stooping, kneeling, crouching. No crawling. No commercial driving.
>
> Reaching forward, laterally, overhead is limited to the frequent level. Handling with the left is limited to the frequent level. Fingering with the left is limited to the frequent level. Must be allowed to prop feet up during breaks. Occasional exposure to wetness and extreme cold. No use of heavy machinery. No exposure to unprotected heights. Occasional exposure to irritants such as fumes, odors, dust, and gases.

(Tr. 53-54).

The VE testified that such an individual could not perform Plaintiff's past relevant work.

(Tr. 55). However, the VE testified that there would be a number of sedentary jobs existing

in the national economy that could be performed with the identified restrictions: charge account

clerk, Dictionary of Occupational Titles (DOT) 205.367-014 (34,000 jobs nationally); and,

sorting machine operator, DOT 681.685-030 (22,000 jobs nationally). (Tr. 55).

The ALJ posed a second hypothetical:

> Hypothetical No. 2. Taking Hypothetical No. 1, if I were to state that the hypothetical individual would need four 15 minute breaks in addition to regularly scheduled breaks, would that make a difference? If I added that to Hypothetical No. 1 where he'd need, just because of pain issues, some additional time, maybe he needs even more time in putting his feet up, would that make a difference if added to Hypothetical No. 1?

(Tr. 55-56). The VE testified that there would be no full-time jobs for an individual with the additional restrictions. (Tr. 56).

In response to a third hypothetical, the VE testified that if the hypothetical individual would be slower than other employees due to pain and would need to raise his feet, such restrictions would be work preclusive. (Tr. 56).

The VE also testified that two absences per month would also be a work preclusive limitation. (Tr. 56).

In response to another variation on the first hypothetical, the VE testified that an individual who needed frequent supervision in order to keep up with other employees and frequent encouragement would be unemployable. (Tr. 57).

Finally, the VE testified that an individual with the limitations identified in the first hypothetical except for a reduction to occasional handling bilaterally would rule out all sedentary work. (Tr. 57).

The VE indicated her testimony was consistent with the DOT. (Tr. 57).

In response to a question from Plaintiff's counsel, the VE testified that an individual with the limitations identified in the first hypothetical by the ALJ except for a reduction to occasional feeling and fingering bilaterally would rule out all sedentary work. (Tr. 59).

11

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R.

§§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2. The claimant has not engaged in substantial gainful activity since April 10, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar neuritis; post laminectomy syndrome; obesity; lumbar stenosis; degenerative disc disease; left carpal tunnel syndrome; left cubital tunnel; asthma; ulnar neuritis of the left upper extremity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the following residual functional capacity: he is limited to sedentary work as defined by the regulations; foot control operation with the right is limited to the occasional level; sit/stand option must be allowed to change positions after 30 minutes to stand or stretch for a minute or two or to sit for a minute or two just to change positions; push or pull is limited as per exertional weight limits and also with the left limited to the occasional level; cane is required for ambulation; never climbing ladders, rope or scaffolds; occasional for climbing ramps or stairs, balancing, stooping, kneeling, crouching; no crawling; no commercial driving; reaching forward, laterally or overhead is limited to the frequent level; handling with the left is limited to the frequent level; fingering with the left is limited to the frequent level; must be allowed to prop feet up during breaks; occasional exposure to wetness and extreme cold; no use of heavy machinery; no exposure to unprotected heights; occasional exposure to irritants such as fumes, odors, dust and gases.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on *** 1974, and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 10, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-23).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ

failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681.

### B. Plaintiff's Assignments of Error

#### 1. Weight Ascribed to Treating Physician Dr. Brown

In the first assignment of error, Plaintiff asserts the ALJ erred by discounting the opinion of his treating physician, Dr. Brown, arguing that Dr. Brown's opinion was indeed supported by the record, including the opinions offered by other providers. (R. 14, PageID# 2874-2880). The Commissioner contends that the ALJ identified numerous inconsistencies between Dr. Brown's opinion and the evidence of record, and argues inconsistency is a good reason to discount a treating source's opinion. (R. 16, PageID# 2892-2897).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. § 404.1527(d)(2)). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). "An example of a good reason is that the treating physician's opinion is 'unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.'" *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

16

The Commissioner does not challenge Plaintiff's assertion that Dr. Brown was a treating source (R. 16), and the ALJ's decision expressly refers to Dr. Brown as a treating physician. (Tr. 19). Because it is undisputed that Dr. Brown treated Plaintiff, the ALJ was required to provide good reasons for rejecting the limitations the doctor assessed. The ALJ set forth the following explanation for giving little weight to Dr. Brown's opinions:

> In determining the claimant's residual functional capacity, I have given partial weight to the opinions of Dr. Brown, a treating physician at Exhibits 8F and 11F (See Exhibit 8F, opinion dated December 27, 2015, and at Exhibit 11F dated March 27, 2016). The severity of the restrictions put forth by Dr. Brown, due in part to pain, are inconsistent with the record. For example, Dr. Brown opined in part that the claimant could sit no longer than 30 minutes without standing and change of position (Exhibit 8F/1). Yet, Dr. Sethi's observation on September 28, 2016, at Exhibit 19F/11 (the claimant "was able to drive himself to his appointment in a big van ...    ") along with Dr. Moore's observation in September 2015 ("I am still somewhat perplexed that his overall presentation appears [to] be relatively comfortable despite his subjective complaint as well as manifestation of pain during the examination" (Exhibit 3F/8)) are pertinent. In both opinions, Dr. Brown also opined that the claimant was unable to work in the context of his past relevant work as a factory worker. Although as discussed more fully below, I [find] that the claimant's residual functional capacity precludes performance of his past relevant work, the finding by Dr. Brown has limited value. Dr. Brown also noted that the claimant was using a cane to assist with ambulation (Exhibit 11F), although I find that a cane is required for ambulation, Dr. Brown's statement is a statement of cane use, not an assessment of the need to use a cane. Finally, Dr. Brown provided limited medical source statement information and no function-by-function assessment, which further weighs against giving her opinion greater weight.
>
> On March 28, 2016, Dr. Brown completed a Disability Impairment Questionnaire (Exhibit 12F). I have also given little weight to this opinion. First, this opinion is internally inconsistent. Dr. Brown opined in part that the claimant can sit only less than one hour during an 8-hour workday but she also opined that the claimant could sit up to 60 minutes and after a break return to sit up to 60 minutes. In this regard, Dr. Brown opined on October 5, 2016, that sitting was only a moderate limitation (See Exhibit 19F/8). Dr. Brown's opinion is also inconsistent with the record. For example, Dr. Brown provided restrictive left hand manipulation limitations and right hand limitations, however the EMG documented bilateral carpal tunnel syndrome, mild in degree (Exhibit 3F/13). Moreover, at Exhibit 19F/8, Dr. Brown provided no functional limitations in the area of fine motor. Finally, the severity of Dr. Brown's report is inconsistent with the record of the

claimant's activities (See Exhibit 19F/11 observation by Dr. Sethi).

I have also given only partial weight to the opinion of Dr. Brown at Exhibit 19F/1-9 (duplicative report at Exhibit 17F) dated October 5, 2016. Dr. Brown's opinion is not consistent with the medical evidence of record. For example, Dr. Brown opined in part that the claimant was "extremely limited" in the ability to stand and walk (Exhibit 19F/8). In this regard, Dr. Brown reported that the claimant had an antalgic gait and used a cane (Exhibit 19F/6). However, Dr. Sethi, who examined the claimant approximately one week before on September 28, 2016, reported a normal gait and no use of an assistive device (Exhibit 19F/12). Moreover, treatment notes at Exhibit 22F from Dr. Hedaya for the period April 2017 to January 2018 do indicate the use of a cane, however, there also reports of no difficulty walking (See Exhibit 22F/4, 8, 12, 17, 21, 25, 31, 37, 44, 47, 51) by the claimant (also see reports of a cane use in Dr. Brown's treatment notes for the period January 26, 2017, to November 1, 2017, at Exhibit 20F). All of this leads me to conclude that while the claimant may use a cane, his standing and walking are simply not as limited as Dr. Brown opines at Exhibit 19F.

(Tr. 19-20).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

As stated above, the ALJ found the following: that Dr. Brown's opinion was "inconsistent with the record," it was "inconsistent with the claimant's activities," Dr. Brown's opinions were at times internally inconsistent, and the three opinions were not always consistent with each other. (Tr. 19). As an example, the ALJ pointed out that the March 2016 opinion of Dr.

Brown stated that Plaintiff could sit less than one-hour in an eight hour workday (Tr. 901), while

her October 2016 opinion (Tr. 1098) states that Plaintiff had only moderate limitations sitting.

(Tr. 19).

"Supportability" is also one of the factors specifically set forth in the regulations used to

evaluate opinion evidence, and states that "[t]he more a medical source presents relevant

evidence to support an opinion, particularly medical signs and laboratory findings, the more

weight we will give that opinion. The better an explanation a source provides for an opinion, the

more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3). The ALJ expressly noted that

the December 2015 opinion did not provide much in the way of medical source information or

any function-by-function assessment.[2]  (Tr. 19).

Finally, the ALJ specifically relied upon statements and/or notations from other *treating*

sources—treating sources who were offering opinions in their area of specialization—that

undermine the opinion of Dr. Brown who was Plaintiff's general physician. Dr. Hedaya,

Plaintiff's pain management specialist, repeatedly and consistently noted that Plaintiff had "no

difficulty walking" while also noting Plaintiff had an antalgic and wide-stanced gait. (Tr. 19,

citing Tr. 1276, 1280, 1284, 1289, 1293, 1297, 1303, 1309, 1316, 1319, 1323). The ALJ made

specific mention of the fact that Dr. Moore, Plaintiff's back surgeon, opined that he was

"somewhat perplexed that [Plaintiff's] overall presentation appears to be relatively comfortable

despite his subjective complaint as well as manifestation of pain during the examination." (Tr.

569). Dr. Moore further opined that based on Plaintiff's improved function, the MRI results, and

---

[2]  The ALJ's decision is consistent with Dr. Brown's December 2015 opinion to the extent the
doctor opined that Plaintiff could not return to his past relevant work as a factory worker, and
that Plaintiff needs a sit/stand option every thirty minutes. (Tr. 16, 21).

the CT scans, further operations or explorations were unwarranted. *Id.*

The ALJ's discussion concerning the consistency and supportability factors in the context of Dr. Brown's opinion, as well as the inconsistency of said opinions with the treatment records and the opinions of other treating specialists that are contrary to Dr. Brown's opinions, satisfied the treating physician rule. *See generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016). The decision renders it apparent that the ALJ considered the proper factors in determining how much weight to ascribe to Dr. Brown's opinions even if the decision does not explicitly discuss each factor. *See Francis*, 2011 WL 915719, at *3 (the regulations require only consideration of the factors, and does not require an the ALJ to articulate "an exhaustive factor-by-factor analysis"); *Gayheart*, 710 F.3d at 376.

Although Plaintiff ostensibly argues that the ALJ failed to give good reasons for discounting Dr. Brown's opinion, Plaintiff's brief and reply do not directly challenge these reasons given by the ALJ, but rather suggest that other portions of the record "when weighed properly direct that Dr. Brown's opinion be weighted greater than that of the consultative examiner." (R. 17, PageID# 2905). Plaintiff argues that Dr. Brown's opinion should have been given greater weight because he had back surgery, because of the results of EMGs and CT scans, and because clinical evidence allegedly supports the provider's opinions. (R. 14, PageID# 2875). Finally, Plaintiff argues that physical therapist DePolo's examination supported Dr. Brown's opinions while also suggesting the ALJ improperly credited the opinion of a consultative physician Dr. Sethi over that of a treating source. (R. 14, PageID# 2877-2878).

To the extent Plaintiff argues that other portions of the record may support Dr. Brown's

opinions, such an argument essentially invites the court to compare and re-assess the inconsistent and poorly explained opinions of a treating source and offer its own assessment as to their consistency with the record as a whole. Such an invitation must be rejected as courts "may not reweigh conflicting evidence on appeal, but instead must affirm" if a decision is supported by substantial evidence. *Haun v. Comm'r of Soc. Sec.*, 107 Fed. App'x 462, 465 (6th Cir. 2004); *see also Steed v. Colvi*n, 2016 U.S. Dist. LEXIS 114027 (N. D. Ohio, Aug. 25, 2016) (McHargh, M.J.) ("While [the plaintiff] may disagree with the ALJ's explanation or her interpretation of the evidence of record, her disagreement with the ALJ's rationale does not provide a basis for remand."); *Kiser v. Colvin*, No. CV 14-170, 2016 WL 527942, at *3 (E.D. Ky. Feb. 8, 2016) ("To the extent that Plaintiff suggests that … evidence is open to another interpretation that favors his claim, the Court declines to reweigh the evidence in this fashion."); *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-CV-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."), *report and recommendation adopted*, No. 2:15-CV-3015, 2017 WL 1034583 (S.D. Ohio Mar. 16, 2017).

With respect to physical therapist De Polo's opinion, the ALJ expressly discussed this non-acceptable medical source opinion and ascribed it little weight. (Tr. 20). Plaintiff has not identified any legal error with respect to the ALJ's treatment of such an opinion.

Furthermore, to the extent Plaintiff argues it was error for the ALJ to assign little weight or partial weight to Dr. Brown's opinions while assigning great weight to the opinion of a non-treating, consultative examiner—Dr. Sethi—there is no indication that the ALJ improperly discounted Dr. Brown's opinion solely because of such an inconsistency. *See Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 554 (6th Cir. 2016) (finding no error where the ALJ accorded

greater weight to the opinions of State agency physicians than to a treating source where the ALJ provided "sound reasons" supported by substantial evidence).[3]

The court recommends finding that Plaintiff's first assignment of error is without merit.

**2. Credibility**

In the second assignment of error, Plaintiff asserts the ALJ erred by discounting the credibility of his symptoms, and argues the record, including objective testing, supports his allegations of disabling pain. (R. 14, PageID# 2881-2883).

"[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). The *Villarreal* court noted "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded." *Villarreal*, 818 F.2d at 463 (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc.*

---

[3] Where the reason given for rejecting a treating source's opinion is solely that it conflicts with a non-treating source's opinion, the treating physician rule has been violated. *See, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that an ALJ may not base the rejection of a treating source's opinion upon its inconsistency with the opinions of non-examining State agency consultants, as that would turn the treating physician rule on its head); *see also Brewer v. Astrue*, No. 1:10-CV-01224, 2011 U.S. Dist. LEXIS 64262, 2011 WL 2461341, at *7 (N.D. Ohio June 17, 2011) (White, M.J.). Here, the ALJ gave sufficient "good reasons" for discounting the Dr. Brown's opinion, in addition to Dr. Sethi's conflicting opinion.

*Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p (as well as SSR 96-7p which it superseded), evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[4] 2017 WL 5180304

---

[4] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a

at *2-3. The ALJ's decision found the first step was satisfied and states that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms…." (Tr. 17).

After step one is satisfied, an ALJ should consider the intensity, persistence, and limiting effects of an individual's symptoms. The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 17). The ALJ discussed Plaintiff's alleged functional limitations in the following lengthy discussion:

> During the hearing, the claimant testified that as to what keeps him from working, he noted the back surgery and reported pain down his right leg all the time and after surgery, in part numbness in his hands. In a work situation, the claimant testified that he cannot feel anything to grab, he drops things all the time and does not have the grip strength that he had previously. Strength and feeling are affected. He also falls down frequently. In addition to the cane, which he testified was prescribed, and he uses all the time, he also uses a walker occasionally. He estimated that during walking and standing he uses the cane about 95%. The claimant also testified to a car accident in May 2017 when he injured his right arm, which he discussed.

> The claimant testified to very few good days. He also testified to restricted activities of daily living and reported that weather affects his pain and reported most days he naps for approximately two hours. This is due to difficulty sleeping the previous night due to pain in his back and down his leg, which he discussed. When he experiences shooting pain from his back to his leg, he lies down and elevates his feet. He estimated that during full time work, he would have to do this 5 to 10 times daily, 45 to 60 minutes each time. As to his hands, he testified to difficulty with fine manipulation with both hands as well as reaching, this due to back pain.

---

different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

While the claimant has experienced pain as a result of his back surgery, his reports including reduced activities of daily living, or significant problems with reaching, are not consistent with the record as a whole. First, Dr. Moore (the claimant's back surgeon) noted on September 15, 2015, "I am still somewhat perplexed that his overall presentation appears [to] be relatively comfortable despite his subjective complaint as well as manifestation of pain during the examination" (Exhibit 3F/8). Shortly thereafter, on follow up on September 30, 2015, Dr. Moore reported in part imaging techniques that is an MRI and CT scan "looked good with no evidence of nerve root compression" (Exhibit 3F/4). On September 28, 2016, Dr. Sethi opined in part that the claimant's "subjective symptoms do appear to *far exceed* his physical findings. He had no acute inflammatory response, fever, emergency room visits, or hospitalizations since his surgery (See Exhibit 19F/11, emphasis added). Finally, I also note a reduction in the pain level (See Exhibit 22F), over the course of recent treatment with Dr. Hedaya as well as response to pain treatment during the period under adjudication (also see Exhibit 4F/73, 82, 84, 86, and page 76). Indeed, the most recent CT scan performed on August 24, 2017, carried an impression of moderate central spinal stenosis, mild left lateral recess and foraminal narrowing L3-L4; postoperative changes at L4-L5, with moderate left lateral recess narrowing, at L4-L5, secondary to hypertrophic bony changes of the fused left facet joint and mild left lateral recess and neural foraminal narrowing at L5-S1 but nothing more significant (see Exhibit 22F/56). More recently on October 30, 2017, a spinal cord stimulator was implanted (Exhibit 22F/41). The observations regarding the claimant's pain and objective findings as well as the reduction in pain are not consistent with reports of disabling pain. As to the claimant's allegations of difficulty walking presented during the hearing, while I find a cane is required for ambulation (See Exhibit 2F/165, cane prescribed in April 2015), nonetheless, the record does not support finding that significant restrictions result (See Exhibits 19F/2 and see Exhibit 22F treatment notes which indicate the use of a cane, however, there also reports of no difficulty walking (See Exhibit 22F/4, 8, 12, 17, 21, 25, 31, 37, 44, 47, 51) by the claimant.

The claimant's allegations of falling down frequently presented during the hearing, are likewise not consistent with the record. While the claimant has fallen, the treatment notes of Dr. Brown and Dr. Hedaya does not document recurrent reported falls (see Exhibits 18F, 20F and 22F). Prior to the back surgery in April 2015, the claimant reported falls, one in March 2015 (Exhibit 4F/9). Dr. Brown also noted in December 2015, that the claimant reported at least two falls since October 2015 (see Exhibit 8F/1, dated December 27, 2015). I note one report of falling in Dr. Brown's treatment note dated July 25, 2016 (Exhibit 18F/14), a note by Dr. Brown on October 5, 2016, that the claimant had a "high fall risk" (Exhibit 19F/5), and a report to Dr. Sethi by the claimant of balance problems due to back spasms (Exhibit 19F/11). However, there are no reports of falls after July 2016.

As to the claimant's right upper extremity, the claimant injured his right wrist in a

motor vehicle accident in May 2017 (Exhibit 20F/10). However, x-rays were negative (Exhibit 20F/35). Even considering the findings on examination with Dr. Hedaya regarding the claimant's wrists (See Exhibit 22F) or elbow, these findings are not consistent with disabling limitations due to wrist problems or from the lateral epicondylitis on the right (See Exhibit 22F). As to allegations of difficulty with fine manipulation, as discussed above, the EMG documented bilateral carpal tunnel syndrome, mild in degree (Exhibit 3F/13). While the claimant underwent right carpal tunnel surgery in 2001 and 2002 (see Exhibit 4F/3), there is no indications of any residuals (see Jamar Maximum Voluntary Effort Test report at Exhibit 15F/9). Moreover, at Exhibit 19F/8, Dr. Brown provided no functional limitations in the area of fine motor. Dr. Sethi reported on September 28, 2016, that the claimant "was able to drive himself to his appointment in a big van. He could back out of the parking space at our office and we observed him easily maneuvering his large vehicle to drive away without difficulty ..." (Exhibit 19F/11). The objective findings as well as the opinion evidence and the observation by Dr. Sethi, are simply not consistent with the claimant's allegations.

(Tr. 17-19).

Plaintiff asserts that "the record, including objective testing, as discussed *supra* supports his allegations of disabling pain." (R. 14, PageID# 2882). Plaintiff points to his surgeries and injections, which he alleges did not relieve his pain. *Id*. The Commissioner asserts this argument is unavailing because, as expressly noted in the ALJ's decision, objective testing revealed mild and moderate findings at most. (R. 16, PageID# 2900). Indeed, the ALJ's credibility discussion points to the statements of treating surgeon Dr. Moore and consultative examiner Dr. Sethi suggesting that Plaintiff's subjective complaints are incongruent with the objective evidence. (Tr. 17-18).

The Commissioner further argues that merely pointing to other evidence that might have supported Plaintiff's subjective claims does not furnish a basis for remand as the issue is whether the ALJ's decision is supported by substantial evidence. (R. 16, PageID# 2900). The Commissioner is correct.[5] Plaintiff cannot show the credibility determination was erroneous

---

[5] If substantial evidence supports the Commissioner's decision, a reviewing court must affirm

simply by pointing to some evidence of record that may support his allegations and ignoring the evidence of record cited by the ALJ supporting the ALJ's reasons for discounting subjectively reported symptoms.

Further, the Commissioner asserts that Plaintiff's argument—that his treatment (*i.e.* surgeries and injections) did not relieve his pain—is itself based on Plaintiff's subjective self-reports. (R. 16, PageID# 2900). The court agrees with the Commissioner that a plaintiff cannot prove that his subjective statements were credible by pointing to his or her own subjective statements—even when those statements are recorded in medical notes. Such circular reasoning is entirely unpersuasive and inconsistent with other decisions. Plaintiff's statements made to medical sources or to an occupational therapist are not *per se* credible, nor are they transformed into "medical opinions" simply because the patient's statements have been recorded in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) (concluding the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 U.S. Dist. LEXIS 135860, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 U.S. Dist. LEXIS 89060, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017 U.S. Dist.

---

the decision even if it would decide the matter differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This "standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id*. (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)); *see also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when substantial evidence exists to support *both* the Commissioner and the claimant).

LEXIS 89061, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 U.S. Dist. LEXIS 184079, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 21835, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.") Plaintiff's reply brief offers no rebuttal.

The court finds the ALJ gave a sufficient explanation for not crediting Plaintiff's subjective statements in their entirety, and recommends finding the second assignment of error to be without merit.

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: October 26, 2020

28

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1)**. Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986)**.